THE PEOPLE *ex rel.* C. W. Pavey, Auditor,

*v.*

D. J. RYAN.

*Filed at Springfield June 10, 1891.*

1. TAXATION—*exempt school and church property.* To secure the exemption of lots from taxation as school property, it must be shown to be the property of an "institution of learning" which is not leased or otherwise used with a view to profit; and to exempt them as church property it must be shown that they are owned by some congregation, and that they are used exclusively for public worship.

2. The words "all public school houses," in section 1 of the Revenue act, which are declared exempt from taxation, refer to the public school houses owned by the State, or the school districts, and boards of education organized under the school laws of the State.

3. A private school house, in which is taught, with a view to profit, the rudimentary branches of education, such as are ordinarily taught in the public schools, is not exempt from taxation.

4. SAME—*laws exempting from, strictly construed.* All laws exempting property from taxation must be strictly pursued, and such exemption can not be made, by judicial construction, to embrace other objects than those plainly expressed in the statute.

5. SAME—*power of county board to relieve from.* The board of supervisors have no power to relieve land from the burden of taxation unless it is exempt under the statute.

This is a proceeding commenced in this court by the Auditor of Public Accounts under section 97 of the Revenue act. The facts are stated in the opinion of the court.

Mr. GEORGE HUNT, Attorney General, for the relator:

It is well settled that all laws exempting property from taxation are to be strictly construed, and no property is to be exempted from taxation unless coming clearly within the provisions of the statute relating to exemptions. *Montgomery* v. *Wyman,* 130 Ill. 17; *In re Swigert,* 123 id. 267; *People* v. *Anderson,* 117 id. 50.

The only exemption that could be claimed must come within the first or second clauses of section 2 of the Revenue Code, which are as follows:

*First*—All lands donated by the United States for school purposes, not sold or leased; all public school houses; all property of institutions of learning, including the real estate on which the institutions are located, not leased by such institutions or otherwise used with a view to profit.

*Second*—All church property actually and exclusively used for public worship, when the land (to be of reasonable size for the location of the church building) is owned by the congregation.

This is not shown to be the property of an institution of learning, nor is it shown to be the property of any church or religious organization or congregation.

This point was made in *People ex rel.* v. *Anderson, supra,* and *Montgomery* v. *Wyman, supra,* where the exemption of property used exclusively for church or educational purposes was not owned by the congregation or the institution of learning.

The burden is on the person claiming the exemption to make proof of all facts necessary to support such exemption. The record in this case does not show that any proof whatever was made. The petition was presented to the county board, and a committee reported recommending the granting of the petition, and the report was adopted. Presumably the petition was referred to a committee, but the record does not show that, and shows no fact at all as to the ownership of the property.

Mr. Chief Justice Magruder delivered the opinion of the Court:

This is an original proceeding commenced in this Court, in accordance with section 97 of the Revenue Act, by C. W. Pavey, Auditor of Public Accounts, to have the decision and order of the Board of Supervisors of Sangamon County, hold-

ing the property hereinafter named to be exempt from taxation, set aside and reversed.

From the certified statement of the facts by the County Clerk of Sangamon County, as further certified by the Auditor and filed herein, it appears that the following petition, dated July 28, 1890, and signed, "D. J. Ryan, Rector St. Joseph's Church," was addressed and presented to the Board of Supervisors of said county :

"GENTLEMEN :—I most respectfully request that no assessment be made upon the following described property, to-wit : Lots 7 and 8, Block 2, of Robert Allen's subdivision of pt. E. $\frac{1}{2}$, S. W. $\frac{1}{4}$, Sec. 22, T. 16, N. R. 5 in village of North Springfield. Said lots are part of tract of land used for school and church site, enclosed in same yard as school house and church, and are not used for any other purpose, nor are any rents or emoluments derived from their use other than those above stated. I would therefore ask that the erroneous assessment made upon those lots be abated for the future."

On September 18, 1890, the committee on Revenue, or equalization, to whom said petition was referred, reported that they had had it under consideration, and recommended that the prayer of the petition be granted. The report of the committee was adopted.

On November 6, 1890, the Auditor advised the County Clerk of said County that he had received the certified copy of the proceedings of the County Board in the above matter, and also advised him of his objections to the decision of the Board, and also notified the Clerk that he would apply to this Court for an order to set aside and reverse said decision.

The decision of the County Board was clearly wrong. The only exemption that can be claimed must come under the first or second clause of Section 2 of the Revenue Act, which are as follows :

1.  "All lands donated by the United States for school pur-
poses, not sold or leased. All public school houses. All
property of institutions of learning, including the real estate
on which the institutions are located, not leased by such insti-
tutions or otherwise used with a view to profit.

2.  "All church property actually and exclusively used for
public worship, when the land (to be of reasonable size for the
location of the church building) is owned by the congregation."

There was nothing before the County Board, so far as this
record shows, except the petition or letter of D. J. Ryan, Rec-
tor of St. Joseph's Church. The Board had no power to re-
lieve the lots in question from the burdens of taxation, unless
such lots were exempt under the Statute. All laws exempting
property from taxation must be construed strictly, and such
exemption cannot be made by judicial construction to embrace
other subjects than those plainly expressed in the act. (*In re
Swigert,* 123 Ill. 267.)

There is nothing here to show that there was a "public
school house" upon this property. The words, "all public
school houses," as used in the statute, refer to the public school
houses owned by the State, or the School Districts and Boards
of Education organized under the school laws of the State,
which have been passed in pursuance of the Constitutional
requirement that "the General Assembly shall provide a
thorough and efficient system of free schools whereby all
children of this State may receive a good common school
education." (Cons. Art. 7, Sec. 1.)

It has been held in Ohio, that parochial schools, with their
play grounds, were not "public school houses" within the
meaning of the term, "public school houses," as used in the
constitution of that State. But it was there held, that such
parochial schools with their play grounds were exempt from
taxation, because they were "institutions of purely public
charity," the constitution of Ohio containing the words, "insti-
tutions of purely public charity." They were there regarded

as institutions of purely public charity, because they were open to the entire community. The word "public," as thus used in connection with the word "charity," was held to mean that which was open to the use of the public, and not necessarily that which was owned by the public. And accordingly, where a statute of that State made use of the expression, "all public school houses  *  *  *  all public colleges, public academies," etc., the word "public," being used so often to qualify what could not be said to belong to the public, was interpreted to be descriptive of the uses to which the property is devoted, and not to the ownership of the property. (*Montgomery* v. *Wyman,* 130 Ill. 17.)

But our statute does not use the words, "all public colleges, public academies," etc. Nor does our constitution contain the expression "institutions of purely public charity." Therefore, the word "public" as used in our statute, as above quoted can not have the broad meaning given to it under the Ohio statute referred to in *Montgomery* v. *Wyman, supra.* "All public school houses," as that term is used in clause 1 of section 2 of our Revenue Act, refer to those school houses, which belong to our system of free schools, and are used for carrying out the purposes of that system.

There is nothing in the record to show that the school house mentioned in the petition may not be a private school house, "in which are taught, with a view to profit, the rudimentary branches of education such as are ordinarily taught in the public schools," and, if such is the fact, it is subject to taxation. (*Montgomery* v. *Wyman, supra.*)

In regard to the statement in the petition that these lots "are part of a tract of land used for school and *church* site, enclosed in same yard as school house and *church,*" it may be said that there is nothing to show that the lots are owned by any congregation. We held that such ownership of the land by a congregation was necessary to exempt church property from taxation. *People ex rel.* v. *Anderson,* 117 Ill. 50.

If it can be said that such a school as the petition speaks of is an institution of learning within the meaning of the statute, and that the constitution regards the property of "institutions of learning" as property used for school purposes, it still remains true that these lots are not shown to be the property of an institution of learning that is not leased or otherwise used with a view to profit. Such a showing was held to be necessary in order to secure exemption in *Montgomery* v. *Wyman, supra.*

The decision of the Board of Supervisors of Sangamon County will be reversed, and the proceeding remanded.

*Decision reversed.*