THE PEOPLE *ex rel.* Breymeyer, County Collector,

*v.*

THE WATSEKA CAMP MEETING ASSOCIATION.

*Filed at Ottawa March 28, 1896.*

1. TAXES—*statutory exemptions from taxation construed strictly.* Statutes exempting property from taxation must be strictly construed, and those who claim their benefits must bring themselves clearly within their provisions.

2. SAME—*lands used for camp meetings not exempt.* Sixteen acres of land used for religious camp meetings, owned by a corporation organized under the statute for the formation of corporations "not for pecuniary profit," and not under that relating to religious societies, is not exempt from taxation under the statute (Rev. Stat. chap. 120, sec. 2,) which exempts certain church property.

APPEAL from the County Court of Iroquois county; the Hon. C. W. RAYMOND, Judge, presiding.

W. F. PIERSON, State's Attorney, for appellant.

HILSCHER & GOODYEAR, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

To an application for judgment against certain lands of appellee for delinquent taxes the court below sustained the objection that the property was exempt from taxation, and appellant appeals. But one question is involved in the case,—that is to say, is the property assessed exempt, as church property, under clause 2,

section 2, chapter 120, of the Revised Statutes. (2 Starr & Curtis, 2027.)

The land, consisting of sixteen acres, is owned by appellee. It is enclosed by a high barbed-wire fence, and is used for holding religious camp meetings. The only witness who testified on the hearing says it "is actually and exclusively used as a place of public worship, and that there is no more of it than is necessary for the use to which it is put." It appears from his testimony that private parties own cottages upon the grounds, which they occupy during the meetings, and the association owns two cottages which it uses for visiting ministers and guests during meetings, and one which is occupied by a family at all times, rent free, for taking care of the grounds. The company also owns a dining hall, at which meals are furnished at twenty-five cents each, and a ladies' lodging hall, where guests are entertained for compensation. It owns tents, which are rented at from $1.50 to $2.50 each for the season. An admission fee to the grounds is also charged. The revenue derived from these sources is placed with the general fund to defray the expenses of the meetings, so far as it will go, but at no meeting has the income derived therefrom been sufficient to meet the outlay for necessary expenses of each meeting. This witness says the association is composed of the several congregations throughout what is known as the Kankakee District, composed of part of Kankakee county, Iroquois county and part of Ford county. Its final certificate of organization is as follows:

"Whereas, a certificate, duly signed and acknowledged, having been filed in the office of the Secretary of State on the 20th day of July, 1881, for the organization of the Watseka Camp Meeting Association of the Methodist Episcopal Church, under and in accordance with the provisions of an act concerning corporations, approved April 18, 1872, and in force July 1, 1872, a copy of which certificate is hereto attached: Now, therefore, I,

160—37

Henry D. Dement, Secretary of State of the State of Illinois, by virtue of the powers and duties vested in me by law, do hereby certify that the Watseka Camp Meeting Association of the Methodist Episcopal Church is a legally organized corporation under the laws of this State."

Section 1, chapter 120, *supra*, provides that all real and personal property in this State "shall be assessed and taxed, except so much thereof as may be in this act exempted." Section 2, under which this exemption is claimed, is as follows: "All property described in this section, to the extent herein limited, shall be exempt from taxation, that is to say: First, * * * Second, all church property actually and exclusively used for public worship, when the land (to be of reasonable size for the location of the church building) is owned by the congregation."

Statutes exempting property from taxation must be strictly construed, and those who claim their benefits must bring themselves clearly within their provisions. Thus it was said *In the Matter of Swigert*, 119 Ill. 83 (p. 86): "It is obvious that all laws exempting property from taxation are not only restrictions or limitations on the taxing power, but they necessarily result in an unequal distribution of the burdens of government. The effect is not only to relieve the property exempted from the payment of its due proportion of taxes, but that which it ought to pay and would pay, under an equal and fair apportionment of them, must also be collected from the property not exempted. These considerations have very properly induced courts to adopt what is known as a strict construction in giving effect to such laws,—hence nothing will be held to come within the exemption which does not clearly appear to be so, and all reasonable intendments will be indulged in favor of the State. Presumably, all property is subject to taxation. When, therefore, it is claimed that a particular piece or class of

property is exempt, the party interposing the claim must come prepared to establish it by clear and satisfactory proof." In support of the foregoing proposition numerous previous decisions of this court are cited. See, also, *People ex rel.* v. *Anderson,* 117 Ill. 50; *In the Matter of Swigert,* 123 id. 267; *Montgomery* v. *Wyman,* 130 id. 17; *People ex rel.* v. *Wabash Railway Co.* 138 id. 85.

Under this rule, can it be said the second clause of section 2, *supra,* was intended to exempt camp meeting grounds like those here in question? By the term "church property," as used in the statute, is plainly meant the church, defined by Webster to be a building set apart for Christian worship, and a lot of reasonable size for its location. It is only by a liberal construction, if at all, that it can be made to include camp meeting grounds like those in question, and such a construction, under the foregoing rule, is not permissible. Again, the clear import of the language of the clause is, that in order that such property be exempt from taxation it must not only be actually and exclusively used for public worship, but some distinct congregation must use it. By this we do not mean that others may not worship in it by permission, but that some one society or congregation shall so use the property and own it. The language "owned by the congregation," admits of no other construction. It can scarcely be claimed that the people who annually assemble in these grounds for worship constitute a congregation, within the meaning of the statute.

But, independently of these considerations, it is impossible to bring the property of appellee within the plain provisions of the clause above quoted, because the proof wholly fails to show that it is owned by any religious congregation whatever. The title is in the incorporated company which, so far as the evidence shows, is organized under the statute providing for the formation of corporations "not for pecuniary profit." (1 Starr & Cur. chap. 32, p. 620.) By section 31 of that act it is pro-

vided that such corporations shall be capable of taking, purchasing, holding and disposing of real and personal estate for purposes of their organization, and it must be to that provision that the right of appellee to acquire and hold its camp grounds is attributable, and there is nothing in that or any other provision of the law which creates a trust in the corporation for the use of any other than its own members,—certainly not in those who may meet there from the various congregations in the Kankakee District for the purposes of worship.

We are unable to escape the conclusion that this property is in no sense owned by the people who worship there, but belongs to the corporation, and therefore the case of *People ex rel.* v. *Anderson, supra,* is decisive against the contention that it is exempt from taxation.   In that case the property was church property used actually and exclusively for public worship and the land was of reasonable size for the church building, and it was said (p. 54): "So far the property falls clearly within the terms of the act.   But the act contains the further requirement that the property, in order to be exempt, must be owned by the congregation.   This property was not owned by the congregation, but the title rested in W. G. Anderson. The congregation that assembled at this church for worship was not organized under the statute, so as to own real estate, and had no power to purchase or own real estate; but if it had been an organized body, so long as Anderson owned the property it was subject to taxation." So, here, the several societies which assemble for worship on these camp grounds, even if they could be called one congregation, do not own the property, either directly or indirectly, but it is held and owned by the corporation.

Counsel for appellee seem to lose sight of the fact that appellee is not organized as a religious corporation and does not own these grounds under section 45 of chapter 32, *supra*.   After providing for the formation of corporations not for pecuniary profit, under the head

of "Religious Corporations" the statute provides (sec. 35): "The foregoing provisions shall not apply to any religious corporation, but any church, congregation or society formed for the purpose of religious worship may become incorporated in the manner following, to-wit." Then follow several sections prescribing the manner in which such a corporation may be organized, and it is clear that a church, congregation or society incorporated in the manner here prescribed could own church property, within the meaning of clause 2, section 2, *supra.* The title held by the trustees in such case is in trust for the members of the church, society or congregation. Section 45 authorizes "any congregation, church or society incorporated under this act" to own camp meeting grounds, but it has no application to corporations organized as was the appellee.

If some one of the several congregations in the Kankakee District organized as religious corporations owned this property and assembled there at stated periods for public worship, then it might be said the property was owned by that congregation. But no such case is here presented. For anything appearing in this record, the appellee is in no way accountable to or under the control of any member of any church, society or congregation. It owns the property, and may sell it, or devote it to any other lawful purpose consistent with the terms of its charter. However commendable may be the objects and purposes of the appellee as an incorporated company, we are unable to discover in the facts of this case any legal grounds upon which it can claim its property to be exempt from the common burthens of taxation.

The judgment of the county court must be reversed, and the cause remanded to that court, with directions to enter a judgment according to the application of the county collector. *Reversed and remanded.*